# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **FERRELL ODEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 10-00212-KD-M** |
| | ) | |
| **TOM VILSACK, Secretary of the** | ) | |
| **United States Department of Agriculture,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

This action is before the Court on the "Motion for Attorneys' Fees and Cost [sic]" (Doc. 158) filed by Plaintiff Ferrell Oden ("Oden") and the "Memorandum in Support of Claims for Attorney's Fees and Expenses" (Doc. 157) filed by Intervenor Dwight E. Jefferson ("Jefferson"), along with the Defendant's Responses (Docs. 163-164) in opposition and Oden's Reply (Doc. 168) in support. Upon consideration, the Court finds that both petitions are due to be **GRANTED in part** and **DENIED in part**, for the reasons and in the manner set forth herein.

## I.      Procedural History

Intervenor Jefferson originally represented Oden in this action. On October 14, 2011, Plaintiff Oden filed a *pro se* motion to "Proceed Pro Se," "citing an irreversible conflict of interest." (Doc. 62). On October 26, 2011, Jefferson filed a motion to withdraw as counsel for Oden, denying a conflict of interest but acknowledging a breakdown in attorney/client relations. (Doc. 66). Jefferson's motion to withdraw was granted. (Doc. 77).

Contemporaneously with his motion to withdraw, Jefferson filed a Plea in Intervention (Doc. 67), seeking to intervene in this action in order to protect his interest in recovering attorney's fees and costs pursuant to a contingency fee agreement between him and Oden for his

representation of Oden in this matter.  The Court has previously found "that Mr. Jefferson is allowed to intervene [as a matter of right] in this action" for such a purpose but reserved judgment on "whether Mr. Jefferson is entitled to recover, and if so, how much . . ." (Doc. 142).[1]

On April 9, 2013, the Court found in favor of Oden on his claim that Defendant Tom Vilsack, in his official capacity as Secretary of the United States Department of Agriculture (hereinafter, Defendant referred to as "the USDA"), had discriminated against Oden on the basis of his race in violation of the Equal Credit Opportunity Act of 1972, 15 U.S.C. § 1691 *et seq.* ("ECOA").  (Doc. 154).  This finding was based on the USDA's concession of liability as to Oden's claim, specifically acknowledging that Oden was the victim of "programmatic [racial] discrimination."  (Doc. 130 at 2, ¶ E).  The Court further awarded Oden actual damages in the amount of $73,900.00.  (Doc. 154).  Finally, the Court set a filing and briefing schedule for any petition requesting an award of attorneys' fees and costs in this action.  Both Oden and Jefferson have filed such petitions, and both are fully briefed and ripe for adjudication.

## II.    Analysis

### A.  Oden's Petition

Oden seeks attorneys' fees and costs incurred by his four current counsel of record in

---

[1] The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1691e(f).  The Court does not need to separately find subject-matter jurisdiction over Jefferson's claim, as "an intervenor of right may assert a cross-claim without an independent jurisdictional basis." Maseda v. Honda Motor Co., Ltd., 861 F.2d 1248, 1253 n.8 (11th Cir. 1988) (citing Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 617 n. 14 (1966)).  Nevertheless, for purposes of determining applicable choice-of-law principals, see *infra*, the Court finds that it has supplemental jurisdiction over Jefferson's claim in intervention.  See 28 U.S.C. § 1367(a) (With some inapplicable exceptions, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or **intervention** of additional parties.").

prosecuting this action, "pursuant to 15 U.S.C. Section 1691e(d)." (Doc. 158 at 2). ECOA provides: "In the case of any successful action under subsection (a), (b), or (c) of [§ 1691e], the costs of the action, together with a reasonable attorney's fee as determined by the court, shall be added to any damages awarded by the court under such subsection." 15 U.S.C. § 1691e(d). In determining an appropriate award of attorneys' fees pursuant to § 1691e(d), "[t]he court should consider all the relevant factors on a case-by-case basis, including the amount of damages awarded, the number of past and future consumers affected by the creditor's discrimination, the complexity of the litigation, and the time expended. Plaintiffs who cause a creditor to halt an illegal practice should be compensated for their attorneys' fees." Anderson v. United Fin. Co., 666 F.2d 1274, 1278 (9th Cir. 1982).

### i. ECOA vs. Equal Access to Justice Act

As an initial matter, the USDA argues that the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"), governs the liability of the USDA, as a federal government agency, for attorneys' fees and costs in this action, rather than § 1691e(d). The USDA cites no authority in support of this proposition, instead relying solely on the language of EAJA.

In opposition to the USDA's argument, Oden cites EEOC v. Northwest Structural Components, Inc., 897 F. Supp. 249 (M.D.N.C. 1995), which held: "Both the plain language of the EAJA and its legislative history indicate that Congress did not intend the EAJA to apply where a statute regulating awards of attorney fees against the government already exists." 897 F. Supp. at 251 (finding that "the EAJA does not apply to suits under Title VII" due to Title VII's own fee-shifting provision). EAJA provides that "a judgment for costs . . . may" and that "fees and other expenses' "shall" be awarded to a "prevailing party" in a civil action against the United

States, "[e]xcept as otherwise specifically provided by statute . . ." § 2412(a)(1) & (d)(1)(A).[2]

It is true that sovereign immunity "bar[s] the award of attorney fees against the United States absent explicit congressional authorization" and that "[a] waiver of the United States government's sovereign immunity must be 'unequivocal[]' . . ." United States v. Certain Real Prop., Located at 317 Nick Fitchard Rd., N.W., Huntsville, AL, 579 F.3d 1315, 1320 (11th Cir. 2009). However, ECOA has been read "to include a broad waiver of governmental immunity[,]" both federal and state. Moore v. U.S. Dep't of Agric. on Behalf of Farmers Home Admin., 55 F.3d 991, 994 (5th Cir. 1995). See also Ordille v. United States, 216 F. App'x 160, 164 (3d Cir. 2007) ("The ECOA 'creates a private right of action against a creditor, including the United States, 15 U.S.C. § 1691e(a), who "discriminates against any applicant, with respect to any aspect of a credit transaction" "on the basis of race, color, religion, national origin, sex or marital status, or age" or "because the applicant has in good faith exercised any right under this chapter." ' Garcia v. Johanns, 444 F.3d 625, 629 n.4 (D.C. Cir. 2006) (quoting 15 U.S.C. § 1691(a)) . . . The ECOA thus waived the sovereign immunity of the United States, permitting suits against the Government for discrimination in the provision of credit."). In setting forth allowable damages under ECOA, Congress drafted § 1691e(b) to expressly exempt "government[s]" and "government subdivision[s] or agenc[ies]" from an award of punitive damages for violating the act. The fact that such an express exemption is not similarly set forth in § 1691e(d) indicates that

---

[2] EAJA also contains a discretionary alternative to § 2412(d)'s mandatory fee provision, which provides: "Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or **under the terms of any statute which specifically provides for such an award**." § 2412(b) (emphasis added). Even if EAJA applied in this case, the Court would find the USDA liable under § 1691e(d) pursuant to this § 2412(d).

Congress intended government entities, including those of the United States, be liable under that subsection for "the costs of the action, together with a reasonable attorney's fee as determined by the court[,]" for ECOA violations.[3]  See Russello v. United States, 464 U.S. 16, 23 (1983) (" '[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972))).

### ii.  Eligibility for Fees & Costs as a "Successful" Party

The USDA argues that this was not a "successful action" entitling Oden to attorneys' fees and costs under § 1691e(d) because he did not receive the major portion of damages that he sought, lost profits.  However, Oden was still awarded some actual damages pursuant to § 1691e(a), and the plain language of § 1691e(d) allows for attorneys' fees and costs to be awarded in "**any** successful action under subsection (a) . . ."  (emphasis added).  See also Anderson v. United Fin. Co., 666 F.2d 1274, 1278 (9th Cir. 1982)  (Under § 1691e(d), "attorneys' fees are available to appellant only if there has been a 'successful action', whether the success lies in obtaining actual or punitive damages, or injunctive or declaratory relief."); Farrar v. Hobby, 506 U.S. 103, 111-12, 114 (1992) ("[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff . . . [W]e hold that the prevailing party inquiry does not turn on the magnitude of the relief obtained [under 48 U.S.C. § 1988].  We recognized as much . . . when we noted that 'the degree of the plaintiff's success' does not affect

---

[3] Certainly the USDA has not disputed that it is liable for actual damages pursuant to § 1691e(a), which also does not contain a governmental exemption like that found in § 1691e(b).

'eligibility for a fee award.' " (quoting Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 790 (1989))).[4] [5] Even a party who receives only nominal damages can be considered a "prevailing party" eligible for a statutory award of attorneys' fees and costs. See Farrar, 506 U.S. at 112 ("We . . . hold that a plaintiff who wins nominal damages is a prevailing party under § 1988.").

The USDA also represents that, "[h]ad Plaintiff accepted the settlement offered to him in Jan/Feb 2011, he would have received more than the seventy-three thousand, nine hundred dollars ($73,900.00) awarded by the Court in 2013." (Doc. 163 at 11). The USDA cites Marek v. Chesny, 473 U.S. 1 (1985), for the proposition that "a plaintiff who rejects an offer of judgment under FRCP 68, and who ultimately obtains a judgment that is less than that offer, is not entitled to an award of attorney's fees for his efforts after the offer in obtaining that judgment." (Doc. 163 at 11). As Oden correctly points out, however, the USDA has presented

---

[4] The Supreme Court has cited favorably a definition of "prevailing party" equating that term with "successful party." See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603 (2001) ("In designating those parties eligible for an award of litigation costs [under 42 U.S.C. § 3613(c)(2) and 42 U.S.C. § 12205], Congress employed the term 'prevailing party,' a legal term of art. Black's Law Dictionary 1145 (7th ed. 1999) defines 'prevailing party' as '[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded <in certain cases, the court will award attorney's fees to the prevailing party>.—Also termed *successful party*.' " (boldface added)).

[5] The USDA cites Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources, 532 U.S. 598 (2001), and Garland Independent School District, 489 U.S. 782, for the proposition that "the term 'prevailing party' does not include a claimant who 'wins' only judicial relief that the other party had already agreed to provide before the onset of the litigation." (Doc. 163 at 10-11). Based on this reading of these two cases, the USDA argues that Oden cannot be considered a "prevailing party" because he obtained a lesser recovery at trial than he would have had he accepted the USDA's purported offer of settlement in early 2011. (Id. at 11). The Court does not agree with the USDA's reading of these cases, as Buckhannon clearly holds "that enforceable judgments on the merits . . . . create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." 532 U.S. at 604 (quoting Garland, 489 U.S. at 792-93).

no evidence of a Rule 68 offer of judgment in this case.

The USDA admits in its brief that it "does not have the Jan/Feb 2011 settlement offer in writing as that was the result of a telephonic settlement conference with Plaintiff's first counsel in this court suit . . ." (Doc. 163 at 12 n.5). Oral offers of settlement are generally held not to constitute Rule 68 offers of judgment. See Knoeffler v. Town of Mamakating, 126 F. Supp. 2d 305, 315 (S.D.N.Y. 2000) ("Rule 68 requires that the defendant's offer be 'served' upon the adverse party. Although it does not specifically require a written offer, some courts have used this language as a basis for its requirement. See Grosvenor v. Brienen, 801 F.2d 944, 948 (7th Cir. 1986) (stating that an **oral** offer cannot be served); McKever v. Vondollen, 681 F. Supp. 999, 1002 (N.D.N.Y.1988) (holding that a **oral** offer made during a conference before the court did not satisfy Rule 68). Therefore, defendant's **oral** offer to engage in settlement discussions does not rise to an offer of judgment pursuant to Rule 68."); Fletcher v. O'Donnell, 729 F. Supp. 422, 431 (E.D. Pa. 1990) ("[Rule 68] offer must be properly served in accordance with Rule 5; thus, it may not be oral, even if it is made at a settlement conference. Grosvenor, 801 F.2d at 948–49; 7 J. Moore, J. Lucas, & K. Sinclair, Moore's Federal Practice ¶ 68.04 (2d ed. 1989).") (Cahn, J.). But see Strauss v. Springer, 817 F. Supp. 1237, 1241-42 (E.D. Pa. 1993) (distinguishing Grosvenor and Fletcher in finding a valid Rule 68 offer of judgment where terms of oral offer were memorialized by plaintiff in letter rejecting offer and proposing counter offer) (Leomporra, M.J.). As to other settlement offers (the USDA specifically references two, one made in May 2012 and the other August 15, 2012), the USDA merely represents that it "offered several times, more than the $10,000 awarded for pain and suffering in an attempt to settle this case . . ." (Doc. 163 at 12 n.5). Because the USDA does not attempt to represent that these other settlement offers exceeded Oden's <u>total</u> recovery in this action, its assertion that these offers bar

Oden's recovery of attorneys' fees are without merit.[6]

However, the Court agrees with the USDA's alternative argument, unchallenged by Oden, that the requested attorneys' fees are due to be reduced in some proportion to his measure of success in this action. See infra; Gray ex rel. Alexander v. Bostic, 613 F.3d 1035, 1040 (11th Cir. 2010) ("The fact that a plaintiff succeeds in only a limited way does not strip her of prevailing party status [under 42 U.S.C. § 1988], but the degree of her success is 'the most critical factor in determining the reasonableness of a fee award.' " (quoting Farrar, 506 U.S. at 114 (quotation marks omitted); also citing Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)).

### iii. Reasonable Attorneys' Fees & Costs

When awarding an attorney's fee, the "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." Am. Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999). In this Circuit, courts generally apply the "lodestar" method – multiplying the hours reasonably expended by a reasonable hourly rate – to make such an assessment. Norman v. Hous. Auth., 836 F.2d 1292, 1299 (11th Cir. 1988). "In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam). Those 12 factors are:

---

[6] In addition, the USDA does not represent that any of its settlement offers exceeded the sum of the judgment obtained and Oden's pre-offer attorneys' fees. See Grosvenor v. Brienen, 801 F.2d 944, 948 (7th Cir. 1986) ("[P]re-offer attorney's fees must be added to the judgment award for the purposes of determining whether the result obtained by a plaintiff is more favorable than the offer of judgment he rejected.").

"(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

Id. at n.2 (citing Johnson, 488 F.2d at 717-19) (quotation marks omitted).

As the party requesting fees, Oden " 'bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates.' " Barnes, 168 F.3d at 427 (quoting Norman, 836 F.2d at 1303). Oden seeks attorneys' and paralegals' fees in the amount of **$278,660.00** and costs in the amount of **$37,195.46**. In support of this request, Oden submits 1) the affidavit of Rocco Calamusa, Jr. ("Calamusa") (Doc. 158-1), an attorney member of the law firm Wiggins, Childs, Quinn & Pantazis, LLC and a counsel of record for Oden in this action, 2) itemized records of expenses and services provided and time expended by counsel for Oden in this action (Docs. 158-2 – 158-6), and 3) the affidavit of Mary E. Pilcher ("Pilcher") (Doc. 158-7), an attorney at the Fairhope, Alabama law firm Stein & Pilcher, LLC.

### 1. Reasonable Hourly Rate

The Eleventh Circuit has instructed that a reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299. In this case, the relevant legal community is Mobile, Alabama. See Barnes, 168 F.3d at 437 (providing that "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed" – in that case, Atlanta) (citation omitted)). Oden "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates.

Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." Norman, 836 F.2d at 1299 (citation omitted). "A court, however, 'is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.' " Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) (quoting Norman, 836 F.2d at 1303). "The court must consider the issue of delay in the receipt of payment by counsel for the prevailing party. In this circuit, where there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates." Norman, 836 F.2d at 1302.

Oden seeks recovery of the time billed for the following individuals at the following rates:

| **Attorneys** | | **Paralegals**[7] | |
|---|---|---|---|
| R. Calamusa (20 years experience) | $400.00/hour | T. Wiggins | $125.00/hour |
| C. Lowell (20 years experience) | $300.00/hour | | |
| C. Allen (40 years experience) | $300.00/hour | | |
| G. Chappell (15 years experience) | $300.00/hour | | |

(Calamusa Aff., Doc. 158-1 at 5-6).[8]

---

[7] Attorneys' fees awarded under fee-shifting statutes can include reasonable fees for work performed by paralegals. See Missouri v. Jenkins by Agyei, 491 U.S. 274, 285 (1989) ("We . . . take as our starting point the self-evident proposition that the 'reasonable attorney's fee' provided for by [42 U.S.C. § 1988] should compensate the work of paralegals, as well as that of attorneys."); Richlin Sec. Serv. Co. v. Chertoff, 553 U.S. 571, 581 (2008) ("[W]e think EAJA, like § 1988, must be interpreted as using the term 'attorney ... fees' to reach fees for paralegal services as well as compensation for the attorney's personal labor.").

[8] Though Jefferson's separate fee petition is mentioned in both Oden's petition (Doc. 158 at 1) and in Calamusa's affidavit (Doc. 158-1 at 4 n.1), Oden does not appear to request an award of fees and costs for Jefferson's work. Rather, Oden only "requests on behalf of his **current** attorneys of record an award of attorneys' fees and costs . . . pursuant to 15 U.S.C. Section 1691e(d)." (Doc. 158 at 2 (emphasis (Continued)

In his affidavit, Calamusa states that he has been engaged in the practice of law for approximately 20 years and that the "vast majority of [his] practice (over 90%) has been in the fields of discrimination, wage and hour, and civil rights." (Doc. 158-1 at 2). His experience includes "represent[ing] plaintiffs in hundreds of discrimination, civil rights, and FLSA actions in various Federal Courts throughout the country on both an individual and class-wide basis and . . . handl[ing] numerous such cases in the appellate courts[,]" in both "class and collective actions" and "complex individual cases." (Id. at 2-3). He avers that "[t]he requested hourly rates are commensurate with the prevailing range of rates charged by attorneys in similar circumstances and with comparable skill and responsibility in similar areas of litigation in Alabama, as well as in the national legal market[,]" and that in his opinion, the requested rates are reasonable. (Id. at 9).

In her affidavit, Pilcher states that she has been practicing law since 1985, with "the vast majority of [her] practice (over 90%) ha[ving] been in the fields of discrimination, employment, civil rights, and constitutional law." (Doc. 158-7 at 2). Pilcher has also "represented plaintiffs in hundreds of discrimination, civil rights, and FLSA actions in various Federal Courts on both an individual and class-wide basis and ha[s] handled numerous such cases in the appellate court[,]" serving as counsel "in several class and collective actions, as well as complex individual cases." (Id.). Pilcher avers that "[w]hile not personally familiar with every one of the attorneys representing [Oden], [she is] knowledgeable of the experience, expertise and reputations of several of these lawyers[,]" particularly that of Calamusa. (Id. at 4). In her opinion, the hourly rates sought by Oden "are reasonable and appropriate given the nature of this litigation, the

---

added)).

prevailing market rates, and the experience and expertise of these attorneys." (Id. at 5).

The USDA's only argument against these requested rates is that they should be reduced to conform with the "prevailing market rates" allowed as fees under EAJA, 28 U.S.C. § 2412(d)(2)(A). However, as discussed *supra*, Oden has not applied for fees pursuant to EAJA, nor is he limited to EAJA fees only in this action. ECOA's fee-shifting provision does not contain the express limitations on fee rates that EAJA contains, instead allowing simply for "costs" and "a reasonable attorney's fee as determined by the court . . ." § 1691e(d). Accordingly, the Court will proceed with a "lodestar" analysis to make this determination.

Calamusa's affidavit fails to provide evidence addressing the fundamental question of whether the hourly rates sought are reasonable in the Mobile market.[9] Pilcher's affidavit,

---

[9] Calamusa has cited two cases from the Northern District of Alabama and another from Georgia that awarded lodestar rates higher than those requested in this case to him and other attorneys with experience levels similar to his co-counsel. "If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." Barnes, 168 F.3d at 437. Pilcher's affidavit "estimates that there are five to ten (5-10) attorneys [in the Mobile area] who would handle [civil rights] matters and less than five (5) who handle them as a majority of their litigation." (Doc. 158-7 at 3). Such evidence does not establish a lack of attorneys practicing in this area willing and able to handle Oden's claims.

He has also cited one case in this district, Gibbs v. Georgia-Pacific Wood Products LLC, No. 1:08-cv-00196-CG-C, in which he was awarded fees at a rate of $300/hour. Calamusa notes that "the award was five years ago for a routine discovery dispute and [his] rate has increased in these five years . . ." (Doc. 158-1 at 8-9). A review of that case indicates that such fees were awarded as a sanction pursuant to Fed. R. Civ. P. 37 rather than pursuant to a fee-shifting statute and that the defendant did not oppose the overall amount requested in that matter. Moreover, the Court's Order granting those fees explicitly stated: "Nothing about entry of this order is viewed by this Court, nor should it be viewed by counsel for plaintiff, as a concession on the defendant's part about the reasonableness or appropriateness of the rates set forth in the affidavits of counsel for plaintiff." (No. 1:08-cv-00196-CG-C, Doc. 55 at 1). As such, the Court finds this case to be of little value in establishing the reasonableness of Calamusa's requested rate in this matter. Cf. Trotter v. Columbia Sussex Corp., Civ. A. No. 08-0412-WS-M, 2010 WL 383622, at *1 n.2 (S.D. Ala. Jan. 29, 2010) (Steele, J.) ("Mr. Brewster also cites a recent award to his partner based on an hourly rate of $300 an hour. Because the award was the product only of a minor discovery dispute (so small, the defendant did not oppose the award), and because the Magistrate Judge explicitly stated that his award would not preclude the defendant from challenging the hourly rate at the conclusion of the case, the Court assigns no weight to this award.").

however, does aver that she is "knowledgeable of the customary fees of attorneys in Alabama, including Mobile, and the country at large with the special expertise, skill and financial strength necessary to undertake cases of the complexity, duration and difficulty" of this case, that she is "familiar with rates billed and paid in the Mobile . . . area[] . . . in discrimination litigation and similar cases requiring comparable skill, effort, and responsibility[,]" and that "the attorneys' fee sought in this case is well-within the range of local and national rates for this type of legal work . . ." (Doc. 158-7 at 5-6, 8).

Upon consideration, the Court finds the requested billing rates of $400/hour for attorney Calamusa (20 years experience) and $300/hour for attorneys Lowell (20 years experience) and Chappell (15 years experience) to be unreasonable and instead finds a rate of $250/hour to be reasonable for each. See Trotter v. Columbia Sussex Corp., Civ. A. No. 08-0412-WS-M, 2010 WL 383622, at *1-5 (S.D. Ala. Jan. 29, 2010) (Steele, J.) (finding reasonable a rate of $280/hour for a well-regarded local attorney with 30 years of experience, primarily in civil rights and constitutional law, and $250/hour for a local attorney with 25 years of experience and a good reputation but with limited civil rights experience); Adams v. Austal, U.S.A., L.L.C., Civ. A. 08-0155-KD-N, 2010 WL 2496396, at *6 (S.D. Ala. June 16, 2010) (Nelson, M.J.) (in awarding attorneys' fees as Rule 37 sanctions, finding that $250/hour was reasonable lodestar rate for all partner attorneys of Wiggins, Childs, Quinn, and Pantazis, LLC, including Calamusa). Cf. Vision Bank v. Anderson, Civ. A. No. 10-0372-KD-M, 2011 WL 2142786, at *3 (S.D. Ala. May 31, 2011) (DuBose, J.) (in promissory note collection case, finding $250/hour to be a reasonable rate for a Mobile attorney with 15 years of experience as a law firm partner). Based on Calamusa's affidavit, Allen, while possessing 40 years of overall experience, appears to have the most limited experience in civil rights matters. Accordingly, the Court finds Allen's requested

rate of $300/hour to also be unreasonable and instead will award him a rate of $250/hour as well. See Trotter, 2010 WL 383622, at *1-5.

No evidence as to paralegal Wiggins's experience has been presented. Absent a showing that a paralegal possesses some extraordinary qualification or expertise, this district has routinely awarded a lodestar rate of $75/hour for work by paralegals, and will do so for Wiggins in this case. See SE Prop. Holdings, LLC v. 145, LLC, Civ. A. No. 10-00521-KD-B, 2012 WL 6681784, at *4 (S.D. Ala. Dec. 21, 2012) (DuBose, J.) (citing cases); Johnson v. TMI Mgmt. Sys., Inc., Civ. A. No. 11-0221-WS-M, 2012 WL 4435304, at *4 (S.D. Ala. Sept. 26, 2012) (Steele, C.J.) (citing cases).

Accordingly, the Court finds $250/hour for all of Oden's current attorneys and $75/hour for paralegal Wiggins to be reasonable lodestar rates in this action.

**2. Reasonable Hours Worked**

Oden has submitted as reasonable the following number of hours worked by his current counsel and their paralegal:

| Billing Individual | Hours |
| --- | --- |
| Calamusa | 289 |
| Lowell | 115.35 |
| Chappell | 165.2 |
| Allen | 152.4 |
| Wiggins | 51.20 |

(Doc. 158-1 at 4).

As an initial matter, the USDA argues that the Court "should deny all attorneys' fees and costs requested for time and efforts expended for [Oden's] failed effort to prove lost profits,

future losses, and a much larger pain and suffering award." (Doc. 163 at 13). In support, the USDA cites <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983), which held: "[W]ork on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved. The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim . . . Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." 461 U.S. at 435, 440 (quotation omitted). <u>Accord</u> <u>Trezevant v. City of Tampa</u>, 741 F.2d 336, 341 (11th Cir. 1984) ("The trial court correctly recognized that the fee award should exclude the time spent on unsuccessful claims except to the extent that such time overlapped with related successful claims." (relying on <u>Hensley</u>)).[10]

However, the <u>Hensley</u> court appeared to distinguish between success on "claims" and success as to "relief requested":

> Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.[FN11]
>
>> FN11 – We agree with the District Court's rejection of a mathematical approach comparing the total number of issues in the case with those actually prevailed upon. Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors. **Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested. For**

_____

[10] "Though the <u>Hensley</u> analysis was crafted in the § 1988 context, it was explicitly designed by the Court to apply to all federal statutes limiting fee awards to ' "prevailing part[ies]." ' " <u>George Hyman Const. Co. v. Brooks</u>, 963 F.2d 1532, 1535 (D.C. Cir. 1992) (quoting <u>Hensley</u>, 461 U.S. at 433 n.7). The Court finds "successful" party, as used in § 1691e(d), to be substantially similar to "prevailing party." <u>See</u> n.4, *supra*.

**example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time.**

461 U.S. at 435 & n.11 (emphasis added) (citation and quotation omitted).

In this case, Oden advanced only one claim against the USDA, for racial discrimination in violation of ECOA, and the Court found in his favor on that claim. Though he did not receive all of the <u>relief</u> he requested for this violation (e.g. lost profits), the highlighted text in <u>Hensley</u>, *supra*, indicates, this is not a "necessarily significant" reason to completely exclude time and costs expended in pursuing unsuccessful avenues of relief.[11] Moreover, to the extent each type of relief sought by Oden in this action can be considered an individual "claim," the Eleventh Circuit takes an expansive view in determining whether claims are interrelated. <u>See</u> <u>Popham v. City of Kennesaw</u>, 820 F.2d 1570, 1579 (11th Cir. 1987) ("Because plaintiff's counsel is required to explore every aspect of the case, develop all the evidence and present it to the court, courts have expansively treated claims as being related." (citation and quotation omitted)). Moreover, Oden's unsuccessful damages claims are not so "distinct in all respects from his successful claims" such that fees and expenses incurred in pursuing these unsuccessful claims should be denied outright. <u>Hensley</u>, 461 U.S. at 440.

However, the Court finds that Oden's failure to recover lost profits is appropriately

---

[11] <u>But see</u> <u>Duckworth v. Whisenant</u>, 97 F.3d 1393, 1397-98 (11th Cir. 1996) ("Following the trial, the court concluded that Plaintiff's own testimony contradicted objective evidence concerning many of his injuries; the court also voiced reservations about the credibility of Plaintiff's treating psychologist and expert on post traumatic stress disorder. Thus, the compensatory damages of $500 awarded to Plaintiff were based largely upon the injury, pain and suffering from Officer Patrick's kick to Plaintiff's groin. Consequently, the court agrees that hours spent on other aspects of Plaintiff's **damage claims** should be deducted from the lodestar where possible." (emphasis added)).

considered in analyzing his overall "degree of success," discussed *infra*. See Hensley, 461 U.S. at 435-36 ('Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill . . . [T]he most critical factor is the degree of success obtained."); Norman, 836 F.2d at 1302 ("Where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours."); Villano v. City of Boynton Beach, 254 F.3d 1302, 1308 (11th Cir. 2001) ("Whether hours were reasonably expended on litigation is a different question than whether hours were necessary to the litigation, the latter standard being the more exacting of the two.").

The USDA has conducted a line-by-line analysis of the billing records submitted by Oden and has objected to specific billing entries for all timekeepers. As to paralegal Wiggins, the USDA argues that Oden is not entitled to recover for 7.25 hours spent by Wiggins performing clerical functions. See Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. 1988) ("In the context of a Title VII case, we have held that paralegal time is recoverable as 'part of a prevailing party's award for attorney's fees and expenses, [but] *only to the extent that the paralegal performs work traditionally done by an attorney.*' Allen v. United States Steel Corp., 665 F.2d 689, 697 (5th Cir. Unit B 1982). The same analysis applies [under EAJA].").[12]  The

---

[12] Compensable paralegal work "might include, for example, factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting (Continued)

USDA also argues that at least 11.75 other hours spent tracking down documents are excessive, wasteful, and unnecessary. After an independent review of the billing records (Doc. 158-2), the Court finds that the 11.75 hours spent tracking down documents was reasonable but that Wiggins's hours are due to be reduced by 13.5 hours for time spent performing the following non-recoverable clerical work:

| Date of Entry | Time Requested | Time Awarded | Amount Reduced |
| --- | --- | --- | --- |
| 1/29/13 | 6.75 | 6.5 | -0.25 (for "have copying center print" documents |
| 2/7/13 | 2.5 | 0 | -2.5 (for pulling, scanning, and emailing exhibits) |
| 2/15/13 | 2.75 | 0 | -2.75 (for "Emails (20) from defendant; save to folder; email to copy center for printing . . ." |
| 2/18/13 | 3.75 | 0 | -3.75 (for going through emails, printing exhibits, preparing notebook, emailing defendant regarding missing exhibits) |
| 3/4/13 | 2.5 | 2.0 | -0.5 (for "copies of plaintiff's exhibits in file folders" |
| 3/5/13 | 3.5 | 2.0 | -1.5 (for "print documents from Book 1' check to Samantha Jones regarding Book 1 documents; organize boxes for trial" |
| 3/6/13 | 4.5 | 4.0 | -0.5 (for ". . . reprint set of Book 1 exhibits . . ." |
| 3/8/13 | 1.75 | 0 | -1.75 (for emails to Samantha Jones regarding documents, calls and emails to IT, email to copy center) |

correspondence. Much such work lies in a gray area of tasks that might appropriately be performed either by an attorney or a paralegal." Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989)

The USDA argues that Calamusa's hours are due to be reduced by no less than 7.75 hours for work duplicative of that performed by Wiggins and Lowell. Similarly, it argues that Lowell's hours are due to be reduced by at least 13.3 for work duplicative of Calamusa's.

"[T]here is nothing inherently unreasonable about a client having multiple attorneys. For that reason, a reduction for redundant hours is warranted only if the attorneys are unreasonably doing the same work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation. Thus, a fee applicant is entitled to recover for the hours of multiple attorneys if he satisfies his burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation. But the fee applicant has the burden of showing that, and where there is an objection raising the point, it is not a make-believe burden." Barnes, 168 F.3d at 432 (internal citations and quotations omitted). See also Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham, 706 F.2d 1205, 1208 (11th Cir. 1983), holding modified on other grounds, Gaines v. Dougherty Cnty. Bd. of Educ., 775 F.2d 1565 (11th Cir. 1985) ("While Johnson recognizes the possibility of unnecessary duplication for which double compensation should not be granted, 488 F.2d at 717, a reduction is warranted only if the attorneys are *unreasonably* doing the *same* work.").

Oden acknowledges that the 7.75 of Calamusa's hours cited by the USDA is "a minimum amount of duplicative time[,]" though he still argues that it should not be eliminated, explaining that "[i]n a multi-counsel case it is normal for some time to be duplicated." (Doc. 168 at 14). The USDA has not specifically argued why any of the entries it cites are duplicative, and Oden adequately explains both the distinct contributions of Calamusa and Lowell and why such hours are customary in multiple-lawyer litigation. Thus, the Court will not deduct any of this time as

duplicative.

The Court has also noted several entries by Allen and Chappell where both attorneys billed for time to travel to and attend events in Mobile:

- 4/6/12 - Allen & Chappell each billed 14 hours to travel to and from Mobile to attend the depositions of Oden and his wife

- 4/25/12 - Allen & Chappell each billed 9 hours to travel to and from Mobile to argue Oden's motion for an extension of time to complete discovery before the Magistrate Judge

- 8/15/12 - Allen & Chappell each billed 12 hours to travel to and from Mobile to attend mediation

- 9/11/12 - Allen & Chappell each billed 9 hours to travel to and from Mobile to attend the final pretrial conference

Upon consideration, the Court finds that the presence of both attorneys at the 8/15/12 mediation was appropriate. In the Court's experience, mediations are oftentimes akin to "mini-trials," at which it is prudent to have "all hands on deck." Also, the presence of two attorneys at the final pretrial conference was not unreasonable. However, the Court finds that insufficient explanation has been provided to justify the travel and presence of both attorneys at the depositions and the motion hearing. Accordingly, the Court will exclude 23 hours from the "lodestar" amount (for bookkeeping purposes, the Court will exclude these entries from Chappell's hours; the Court has already determined that both Allen and Chappell are due to be compensated at the same hourly rate).

The USDA has also argued that a number of entries for all of Oden's current counsel of record are due to be excluded or reduced as excessive for the tasks performed. The USDA

provides no specific argument as to excessiveness. However, the Court's own independent review of the records finds some hours to be excessive.

First, the Court finds that all time spent by Allen and Chappell attending trial, including the time spent traveling to and from Mobile for the trial, is due to be excluded from Oden's award of attorneys' fees. The Court finds that the presence of four attorneys for a trial where only damages were at issue was excessive. Moreover, as the Court observed, neither Allen nor Chappell questioned a single witness or otherwise meaningfully participated in the trial, at which two able counsel already represented Oden. Allen and Chappell's own billing entries indicate that their involvement in the trial included "trial prep" and "review," "ke[eping] notes," "ke[eping] exhibit log and testimony during trial," and "escort[ing] witnesses to stand." (Doc. 158-3 at 6; Doc. 158-4 at 5). None of these functions demonstrates the necessity for or otherwise justifies the presence of two additional attorneys at trial who in no way participated in the proceedings, especially given the fact that only damages were being contested.[13] Accordingly, the Court will exclude 20 hours billed by Chappell and 24 hours billed by Allen. (Id.).

The Court also finds that all remaining travel time is due to be compensated at a rate of $100/hour, as no evidence has been presented of such time having been spent productively.[14]

---

[13] Cf. James v. Wash Depot Holdings, Inc., 489 F. Supp. 2d 1341, 1349 (S.D. Fla. 2007) ("Defendant objects to Boreth's presence at trial because he merely sat at the counsel table and did not even examine a single witness. Defendant cites to Martin v. Cavalier, in support of its position that these hours should be excluded, 48 F.3d 1343, 1360 (4th Cir. 1995) (upholding the district courts finding that an attorney's request for $11,000 for time spent attending trial 'when that attorney examined no witnesses at trial and had "no active participation" in the trial.'). The Court agrees with Defendant. In this case, where little more than attorney's fees was on the line at trial, it was unreasonable for the Plaintiff to bring two counsel to trial when one counsel would be trying the case . . . Accordingly, the Court finds that Boreth's presence at trial was unnecessarily duplicative and the twenty-seven (27) hours claimed for his attendance must be disallowed.")

[14] See Johnson v. Univ. Coll. of Univ. of Alabama in Birmingham, 706 F.2d 1205, 1208 (11th Cir. 1983), holding modified on other grounds, Gaines v. Dougherty Cnty. Bd. of Educ., 775 F.2d 1565 (11th Cir. 1985) ("Since plaintiffs had the right to retain more than one attorney, the exclusion of out-of-
(Continued)

The Court finds that the following hours are due to be compensated at said "travel rate" (the Court notes that all of Oden's current counsel are based in Birmingham, Alabama):

| Calamusa & Lowell (Doc. 158-2) | | | |
|---|---|---|---|
| **Date of Entry** | **Attorney** | **Hours Requested**[15] | **Travel Hours Included** |
| 3/07/13 | Lowell | 9.2 | 3 (round trip between Birmingham, AL, and Greensboro, AL)[16] |
| 3/09/13 | Calamusa | 11 | 3.5 (travel from Birmingham, AL, to Mobile, AL, for trial)[17] |
| 3/09/13 | Lowell | 8.75 | 3.5 (travel from Birmingham to Mobile for trial) |

town counsel's travel time is proper only if it was unreasonable not to hire qualified local counsel. Cf. Dowdell[ v. City of Apopka, Fla.], 698 F.2d [1181, ]1192 [(11th Cir. 1983) ](travel expenses may be recoverable); McPherson v. School District ## 186, 465 F. Supp. 749, 758 (S.D. Ill. 1978) (**compensating out-of-town counsel for travel time to litigation site but at lower rate**)." (emphasis added)); Yule v. Jones, 766 F. Supp. 2d 1333, 1342 (N.D. Ga. 2010) ("Reasonable travel time of the prevailing party's attorneys ordinarily is compensated on an hourly basis, although the rate may be reduced if no legal work was performed during travel." (citing Johnson v. Univ. Coll., 706 F.2d at 1208)); Jones v. Carswell Prop. Maint., Inc., No. 09-22027-CIV, 2012 WL 163884, at *6 (S.D. Fla. Jan. 19, 2012) ("Plaintiffs cite to Johnson v. University College of the University of Alabama in Birmingham, 706 F.2d 1205, 1208 (11th Cir.1983) in support, which held that "the exclusion of out-of-town counsel's travel time is proper only if it was unreasonable not to hire qualified local counsel." Plaintiffs' counsel's office is in Broward County, Florida, but Plaintiffs did not demonstrate that other competent counsel was unavailable in Miami–Dade County, where the claims were pending. The Court notes that some courts permit the recovery of attorneys fees for travel time while other courts exclude them. Consequently, the Court will reduce by half (9.9 hours) the time billed for travel to the trial." (citing cases)); LaShawn A. v. Barry, No. CIV. 89-1754 (TFH), 1998 WL 35243112, at *5 (D.D.C. Feb. 18, 1998) ("Plaintiffs argue that all travel time was productively spent discussing and preparing the case. Courts are divided on how much compensation attorneys are due for travel time. The Court finds that plaintiffs do not establish that all transit time, which accounts for a substantial portion of the award, was spent productively. Therefore, the Court will reduce the recovery for travel time by 25%, to compensate for the loss of productivity involved in frequent travel between New York and Washington, D.C." (internal citations and footnote omitted)).

[15] "Hours Requested" includes time that the court has allowed as attorneys' fees at the lodestar rate.

[16] The shortest route between Birmingham and Greensboro suggested by Google Maps (https://maps.google.com/, last visited 8/7/2013) takes approximately 1.5 hours driving one way. Accordingly, the Court has allowed 3 hours of travel time for the round trip.

[17] The shortest route between Birmingham and Mobile suggested by Google Maps (https://maps.google.com/, last visited 8/7/2013) takes approximately 3.5 hours driving one way.

| 3/12/13 | Calamusa | 14 | 3.5 (travel from Mobile to Birmingham after trial) |
| 3/12/13 | Lowell | 14 | 3.5 (travel from Mobile to Birmingham after trial) |

| Chappell (Doc. 158-3) | | |
| --- | --- | --- |
| **Date of Entry** | **Hours Requested** | **Travel Hours Included** |
| 8/15/12 | 12 | 7 (round trip between Birmingham & Mobile) |
| 9/11/12 | 9 | 7 (round trip between Birmingham & Mobile) |

| Allen (Doc. 158-4) | | |
| --- | --- | --- |
| **Date of Entry** | **Hours Requested** | **Travel Hours Included** |
| 12/15/11 | 9.5 | 8 (# hours explicitly itemized as travel) |
| 4/06/12 | 14 | 7 (round trip between Birmingham & Mobile) |
| 4/25/12 | 9 | 7 (round trip between Birmingham & Mobile) |
| 8/15/12 | 12 | 7 (round trip between Birmingham & Mobile) |
| 9/11/12 | 9 | 7 (round trip between Birmingham & Mobile) |

Accordingly, the Court's initial "lodestar" calculation of attorneys' fees is:

| | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| Calamusa | 282 work hrs. | x | $250/hour | = | $70,500.00 |
| | 7 travel hours | x | $100/hour | = | $700.00 |
| Lowell | 105.35 work hrs. | x | $250/hour | = | $26,337.50 |
| | 10 travel hrs. | x | $100/hour | = | $1,000.00 |
| Chappell | 108.2 work hrs. | x | $250/hour | = | $27,050.00 |
| | 14 travel hrs. | x | $100/hour | = | $1,400.00 |
| Allen | 92.4 work hrs. | x | $250/hour | = | $23,100.00 |
| | 36 travel hrs. | x | $100/hour | = | $3,600.00 |

| Wiggins | 37.7 work hrs. | x | $75/hour | = | $2,827.50 |
|---------|---------------|---|----------|---|-----------|
| | | | **Total** | = | **$156,515.00** |

### 3. **Johnson** Factors

"[T]here is a strong presumption that the lodestar is the reasonable sum the attorneys deserve . . . When the number of compensable hours and the hourly rate are reasonable, a downward adjustment to the lodestar is merited only if the prevailing party was partially successful in its efforts." Bivins, 548 F.3d at 1350-51 (quotation marks omitted). "Among the many considerations a court must entertain when calculating a § 1988 award, 'the most critical factor is the degree of success obtained.' " Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting Hensley, 461 U.S. at 436).[18] Moreover,

> success in a civil rights claim is measured differently than success in a private tort claim. Indeed: "Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large, irrespective of whether the action seeks monetary damages." Blanchard v. Bergeron, 489 U.S. 87, 96, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989). Moreover, the Supreme Court has articulated . . . : "Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." [City of ]Riverside[ v. Rivera], 477 U.S. [561,] 574, 106 S. Ct. 2686[ (1986)].

Id.

However, the Eleventh Circuit has rejected "arguments that the size of an award is irrelevant as a matter of law and that a jury verdict alone proves success to have been complete[,]" holding: "There is no room to doubt that a court may reduce a § 1988 award when the degree of success obtained is limited, even when a plaintiff obtains a favorable jury verdict that a constitutional right was violated. 'The amount of damages a plaintiff recovers is certainly

---

[18] Villano "present[ed] squarely the question of what constitutes 'success' in a complex civil rights case." 254 F.3d at 1305.

relevant to the amount of attorney's fees to be awarded under § 1988.' " Id. at 1305-06 (quoting City of Riverside v. Rivera, 477 U.S. 561, 574 (1986)).

In Villano, the Eleventh Circuit then set forth other considerations for the district court in determining on remand the civil rights plaintiff's degree of success:

> [S]uccess in a civil rights case "cannot be valued solely in monetary terms." See Riverside, 477 U.S. at 574, 106 S. Ct. 2686. Furthermore, when determining the degree of success obtained by a civil rights plaintiff, a court must be careful not to place "undue emphasis on the modest money damages that were found by the jury" because successful civil rights actions vindicate a public interest. Williams v. Thomas, 692 F.2d 1032, 1038 (5th Cir. 1982). In this circuit, we have previously explained that a court that reduced a § 1988 award "would have erred had it ignored the fact that [the plaintiff in a civil rights action] benefitted the public interest by vindicating his constitutional rights." Popham[ v. City of Kennesaw], 820 F.2d [1570,] 1580[ (11th Cir. 1987)] . . .
>
> To avoid undermining the purpose of § 1988, a court must account for [public benefit] when calculating an award of fees and costs. See Riverside, 477 U.S. at 575, 106 S. Ct. 2686 . . .
>
> . . . Although we hold that [a] district court err[s] in reducing [a] fee award without considering a distinct measure of success, we clarify that the court d[oes] not err by considering the damage award as an indicator of success.
>
> The relative importance of a money damage award must be determined on a case-by-case basis. For example, monetary damages will be wholly immaterial when a plaintiff seeks purely equitable relief. See Hensley, 461 U.S. at 430, 103 S. Ct. 1933 (citing Stanford Daily v. Zurcher, 64 F.R.D. 680 (N.D. Cal.1974), aff'd, 550 F.2d 464 (9th Cir.1977), rev'd on other grounds, 436 U.S. 547, 98 S. Ct. 1970, 56 L. Ed. 2d 525 (1978)). **On the other hand, where compensatory damages constitute the primary relief sought and become the only relief obtained, a court is not beyond its discretion in considering the damages awarded as a relevant factor.** See Corder v. Brown, 25 F.3d 833, 837 (9th Cir. 1994). In any event, a court remains obligated to account for all distinct measures of success when determining whether success was limited . . .

Id. at 1305-08 (emphasis added).

The USDA attempts to portray Oden's $73,900 damages award as "nominal" and "de

minimis" recovery entitling him to no award.  See Farrar, 506 U.S. at 115 ("When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." (citation omitted)).  While significantly less than the total damages Oden ultimately sought, $73,900 can hardly be considered nominal damages.  Nonetheless, as Villano clearly emphasizes, the extent of Oden's overall success is very much a factor to be considered in determining the reasonableness of his fee request.

Oden's primary relief sought in this action was compensatory damages.[19]  In the joint Proposed Pretrial Order, which Oden was aware would constitute "constitute the final statement of the issues involved, govern the conduct of the trial, and []constitute the basis for any relief afforded by the Court" (Standing Pretrial Order (Butler, S.J.), Doc. 91-1 at 5), Oden sought as damages, *inter alia*, "$26,112[,]824 for lost economic profits over a forty year period[,]" as well as "[d]amages for emotional stress, pain and suffering in an amount . . .  not exceed two (2) times the amount of economic damages."  (Doc. 130 at 11-12).  At trial, Oden attempted to prove lost profits of $1,783,115 over a 5-year period (Doc. 154 at 6) (which he also suggested, in post-trial briefing (Doc. 148 at 11), could be extrapolated to determine further lost profits).  Ultimately, Oden's award at trial was approximately 4% of the five years of lost profits for which he presented evidence and was an even smaller percentage of the total damages sought in the Proposed Pretrial Order.

On the other hand, "[t]he vindication of a constitutional right is important even if only a small amount of money is involved."  Norman, 836 F.2d at 1302.  In this action the USDA

---

[19] Though Oden claimed to seek injunctive relief in the joint Proposed Pretrial Order (Doc. 130 at 12), Oden did not specifically seek such relief in the operative Complaint in this action (Doc. 49), did not request or argue for such relief at trial, and never filed a motion for injunctive relief.

admitted "programmatic discrimination" in the denial of Oden's farm loans in June 2008 (Joint Proposed Pretrial Order, Doc. 130), and for this discrimination secured $73,900, a not-insignificant sum that will likely induce the USDA to institute changes to prevent such illegal activity from occurring again, thus resulting in a distinct "public benefit."

Upon consideration of Oden's "degree of success" in this action, the Court finds that Oden achieved a limited degree of success calling for a 40% reduction of his "lodestar" attorneys' fees, thus reducing them to **$93,909.00**. Upon consideration of the remaining Johnson factors, the Court finds that none suggest that either an enhancement or a further reduction of attorneys' fees is warranted.

In his affidavit in support of attorneys' fees, Calamusa represents that Oden's current counsel undertook their representation on a full contingency basis, thus making their representation "at-risk" with the possibility of receiving no payment. (Doc. 158-1 at 10-12). The Court notes, however, that all of Oden's current counsel for whom he seeks an award of fees only appeared in this action after the USDA had conceded liability for discrimination after its final agency determination was issued, at which point the only issue in this action was one of damages. As counsel was likely aware, ECOA allowed for a statutory award of attorneys' fees and costs in the event of any successful recovery of actual damages. See § 1691e(d). The possibility that Oden would be unable to prove any actual damages at trial (at the very least, mental anguish) was highly unlikely. Therefore, the Court does not believe that current counsels' representation of Oden in this action was as "at-risk" as they claim. As such, the contingent nature of the fee arrangement between Oden and his current counsel does not warrant an enhanced award of attorneys' fees.[20]

---

[20] See Norman, 836 F.2d at 1302 ("The district court must also determine whether the fee arrangement was contingent. Five justices in [Pennsylvania v. Delaware Valley Citizens' Council (']Delaware Valley Citizens' Council II[']) indicated that in the rare case enhancement may be appropriate if there is a risk of non-recovery of a fee in the case. 107 S. Ct. [3078, ]3089 [(1987) ](O'Connor, J., concurring); id. at 3091 (Blackmun, J., dissenting with Brennan, Marshall and Stevens, (Continued)

### 4. Costs & Expenses

Attorneys Calamusa and Lowell represent that their firm, Wiggins, Childs, Quinn & Pantazis, reasonably incurred $31,572.90 in expenses in this litigation, while attorneys Allen and Chappell both represent that they incurred $5,622.56 in such expenses (plus mileage if allowed).

### a. Witness Fees & Expenses

The largest expenditures sought by Oden are the fees and expenses paid to expert witness Dr. Paul Prentice - $23,856.61 paid by Wiggins, Childs (Doc. 158-5 at 2) and $3,500 paid by Allen and Chappell (Doc. 158-6 at 3). Oden also claims fees for other witnesses at trial.

The Eleventh Circuit has indicated that a "reasonable attorney's fee" award should include reasonable out-of-pocket expenses by the attorney. See Dowdell v. City of Apopka, Fla., 698 F.2d 1181, 1190 (11th Cir. 1983) ("Reasonable attorneys' fees under [§ 1988] must include reasonable expenses because attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs of litigation. The factually complex and protracted nature of civil rights litigation frequently makes it necessary to make sizeable out-of-pocket expenditures which may be as essential to success as the intellectual skills of the attorneys. If these costs are not taxable, and the client, as is often the case, cannot afford to pay for them, they must be borne by counsel, reducing the fees award correspondingly."); Fairley v. Patterson, 493 F.2d 598, 607 n.11 & n.17 (5th Cir. 1974)[21] ("Court costs not subsumed under federal statutory provisions normally granting such costs against the adverse party, Fed. R. Civ. P. 54(d); 6 Moore's Federal Practice

---

JJ.). Such enhancement will be awarded only where it is shown that such enhancement is necessary to assure the availability of counsel. 107 S. Ct. at 3091 (O'Connor, J., concurring).").

[21] The Eleventh Circuit has adopted as binding precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

P54.70, 54.71, are to be included in the concept of attorneys' fees.  Of course, it may be disputed whether such expenses should have to meet the harder discretionary standards or fall within the statutory authorizations . . . Costs are usually fixed and certain.  In public interest litigation, especially, where an attorney may donate his legal talents, the expenses of preparing and conducting the litigation require direct out-of-pocket expenditures by a party, which should be completely recoverable.") (n.17 cited by Dowdell); Wheeler v. Durham City Bd. of Ed., 585 F.2d 618, 623 (4th Cir. 1978) ("[T]he question is whether the statutory authorization of reasonable attorneys' fees [under 20 U.S.C. § 1617 ]was intended to include litigation expenses. We hold that it was.");[22] Northcross v. Bd. of Ed. of Memphis City Sch., 611 F.2d 624, 639 (6th Cir. 1979), holding modified on other grounds, Louisville Black Police Officers Org. v. City of Louisville, 700 F.2d 268 (6th Cir. 1983) ("The authority granted in section 1988 to award a 'reasonable attorney's fee' included the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.").

However, expert fees and expenses cannot be considered awardable as out-of-pocket expenses included with attorneys' fees.  See Wheeler, 585 F.2d at 624 ("We view differently . . . the fees and expenses of outside, non-legal consultants and experts. Their fees and expenses are traditionally not regarded as attorneys' fees, however essential their services may be to the successful preparation and trial of a complex case. We think that their fees and expenses may not be recovered under the rubric of attorneys' fees under [20 U.S.C. ]s 1617."); Northcross, 611

---

[22] Dowdell stated that "[t]he fourth circuit's reasoning [in Wheeler ]concerning award of expenses under 20 U.S.C. § 1617 in a school desegregation case applies equally well" in the context of § 1988 (and therefore, the Court finds, in the context of § 1691e(d) as well).  698 F.2d at 1190 n.13.

F.2d at 639 ("[C]osts incurred by a party to be paid to a third party, not the attorney for the case, []cannot reasonably be considered to be attorney's fees." (citing <u>Wheeler</u>)).

Section 1691e(d) allows for an award of both attorneys' fees <u>and</u> costs. The Eleventh Circuit has stated that "[w]here cost-shifting is expressly authorized by statute, the traditional limitations of Rule 54(d)[ of the Federal Rules of Civil Procedure] and 28 U.S.C. §§ 1920 and 1923(a) do not apply." <u>Dowdell</u>, 698 F.2d at 1188-89 (citing <u>Wheeler</u>, 585 F.2d at 623). <u>Dowdell</u> also stated that, "with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under [42 U.S.C. ]section 1988." 698 F.2d at 1192. In justifying its general proposition, <u>Dowdell</u> noted that Rule 54(d) and §§ 1920 and 1923(a) "are premised on the so-called 'American rule' that each party must bear its own costs." <u>Id.</u> at 1189 n.12. "By contrast, section 1988, and the comparable provisions providing for award of costs in other civil rights statutes . . . carve out broad policy based exceptions to the American rule. The justifications for cost-shifting are opposite to those for the American rule: (1) they are designed to induce and encourage litigation on the theory that litigants acting as 'private attorneys general' may help to enforce important congressional policies; (2) they are primarily employed in contexts where the remedy is non-monetary; and (3) they effectively limit bureaucratic growth by placing enforcement of the civil rights laws in private hands." <u>Id.</u> <u>Dowdell</u> "reject[ed] any interpretation of 'reasonable costs' which would penalize attorneys for undertaking civil rights litigation[,]" holding that "[i]n this circuit the recoverability of costs is determined by the necessities of the case; even relatively large or unusual costs may be taxed when they are reasonably incurred; and there is no bar to complete recovery." <u>Id.</u> at 1191.

However, Dowdell's holding as to costs awarded in civil rights litigation appears to have been called into doubt by subsequent Supreme Court decisions, particularly as to the subject of expert fees. In West Virginia University Hospitals, Inc. v. Casey, 499 U.S. 83 (1991), the Court held:

> Title 28 U.S.C. § 1821(b) limits the witness fees authorized by § 1920(3) as follows: "A witness shall be paid an attendance fee of $30 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance...." In Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 107 S. Ct. 2494, 96 L. Ed. 2d 385 (1987), we held that these provisions define the full extent of a federal court's power to shift litigation costs absent express statutory authority to go further. "[W]hen," we said, "a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limits of § 1821(b), absent contract or explicit statutory authority to the contrary." Id., at 439, 107 S. Ct., at 2496. "We will not lightly infer that Congress has repealed §§ 1920 and 1821, either through [Federal Rule of Civil Procedure] 54(d) or any other provision not referring explicitly to witness fees." Id., at 445, 107 S. Ct., at 2499.

499 U.S. at 86-87 (footnote omitted). Relying on Crawford Fitting, 482 U.S. 437 (1987), the Court in West Virginia University Hospitals "conclude[d] that § 1988 conveys no authority to shift expert fees" as part of a "reasonable attorney's fee."[23]

Later, in 2006, in interpreting the term "costs" as set forth in the fee-shifting statute of the Individuals with Disabilities in Education Act, the Supreme Court relied on Crawford Fitting and West Virginia University Hospitals in rejecting the contention that it should "interpret the term

---

[23] This holding was addressed by legislative amendment of § 1988, in which Congress specifically provided for the recovery of expert fees. See Pub. L. 102-166, Title I, §§ 103, 113(a), Nov. 21, 1991, 105 Stat. 1074, 1079; Landgraf v. USI Film Products, 511 U.S. 244, 250-51 (1994) ("The 1991 [Civil Rights ]Act is in large part a response to a series of decisions of this Court interpreting the Civil Rights Acts of 1866 and 1964 . . . [S]ections of the Act were obviously drafted with 'recent decisions of the Supreme Court' in mind. Thus, . . . § 113 responds to West Virginia Univ. Hospitals, Inc. v. Casey, 499 U.S. 83, 111 S. Ct. 1138, 113 L. Ed. 2d 68 (1991), by providing that an award of attorney's fees may include expert fees . . .").

'costs' in accordance with its meaning in ordinary usage and that [20 U.S.C. ]§ 1415(i)(3)(B) should therefore be read to authorize reimbursement of all costs parents incur in IDEA proceedings, including expert costs."  Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 297 (2006) (quotations omitted).  In doing so, the Court stated:

> "[C]osts" is a term of art that generally does not include expert fees.  The use of this term of art, rather than a term such as "expenses," strongly suggests that § 1415(i)(3)(B) was not meant to be an open-ended provision that makes participating States liable for all expenses incurred by prevailing parents in connection with an IDEA case . . .
>
> . . .
>
> The reasoning of Crawford Fitting strongly supports the conclusion that the term "costs" in 20 U.S.C. § 1415(i)(3)(B), like the same term in Rule 54(d), is defined by the categories of expenses enumerated in 28 U.S.C. § 1920. This conclusion is buttressed by the principle, recognized in Crawford Fitting, that no statute will be construed as authorizing the taxation of witness fees as costs unless the statute "refer[s] explicitly to witness fees." 482 U.S., at 445, 107 S. Ct. 2494; see also ibid. ("[A]bsent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920").

Id. at 297, 301 (citation and quotation omitted in first paragraph).

ECOA does not define the terms "attorneys' fees" and "costs" used in § 1691e(d), and no provision of the act can be read as expressly authorizing an award of witness fees and expenses.  Therefore, witness fees are only recoverable under ECOA to the extent allowed by 28 U.S.C. § 1920.  See Crawford Fitting, 482 U.S. at 439.  "None of the categories of expenses listed in § 1920 can reasonably be read to include fees for services rendered by an expert employed by a party in a nontestimonial advisory capacity . . . When experts appear at trial, they are of course eligible for the fee provided by § 1920 and § 1821."  W. Virginia Univ. Hospitals, Inc., 499 U.S. at 87, 102.  "[T]he recovery of witness fees under § 1920 is strictly limited by § 1821, which authorizes travel reimbursement and a $40 per diem."  Arlington, 548 U.S. at 298.

Section 1821(a)(1) states that "a witness in attendance at any court of the United States, or before a United States Magistrate Judge, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section."  Section 1821(b) provides that "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance [as well as] for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."  Oden's documentation of his expert witness fees (Doc. 168-2 at 10-19), along with the Court's own observations, reveal that Dr. Prentice spent two days attending trial and a day each traveling to and from the trial.  Thus, Oden is due an attendance fee for Dr. Prentice of $160.

Section 1821(c)(1) allows for "[a] witness who travels by common carrier [to] be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance."  "All normal travel expenses within and outside the judicial district shall be taxable as costs pursuant to section 1920 of this title."  § 1821(c)(4).  Oden has submitted evidence (Doc. 168-2 at 14-15, 17) of $559.60 expended by Prentice for airfare, $50 for bag-checking fees, and $90 for taxi services, which the Court finds to be reasonable.  Therefore, Oden will be awarded $699.60 for travel expenses incurred by Prentice.

Section 1821(c)(2) provides: "A travel allowance equal to the mileage allowance which the Administrator of General Services has prescribed, pursuant to section 5704 of title 5, for official travel of employees of the Federal Government shall be paid to each witness who travels by privately owned vehicle. Computation of mileage under this paragraph shall be made on the

basis of a uniformed table of distances adopted by the Administrator of General Services." Oden has submitted evidence (Doc. 168-2 at 14) indicating that Prentice was paid $12.88 for mileage, at a rate of $0.565/mile for 22.8 miles total (presumably to drive to and from his home airport). Because $0.565/mile is the official prescribed mileage rate for a private automobile as of January 1, 2013 (http://www.gsa.gov/portal/category/104715), the Court will award Oden $12.88 for Prentice's mileage.

Moreover, "[a] subsistence allowance shall be paid to a witness when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day." § 1821(d)(1). Such "[a] subsistence allowance for a witness shall be paid in an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services, pursuant to section 5702(a) of title 5, for official travel in the area of attendance by employees of the Federal Government." § 1821(d)(2). In the month of March 2013, when the trial occurred, the maximum per diem rate for lodging was $94, and the maximum per diem for meals and incidentals was $51 (http://www.gsa.gov/portal/category/100120 (for Mobile, AL)). The evidence indicates that Prentice stayed at a Mobile hotel for three nights while in town for trial, at a total cost of $549.42, or $183.14 per night. As this exceeds the allowable per diem for lodging, the Court will award Oden only $282 for Prentice's lodging expenses. As Prentice's meals and other incidentals did not exceed the maximum per diem rate, the Court will award Oden the full amount sought for those, $72.71. Thus, the total amount awarded to Oden for his expert witness costs is $1,227.19.

Oden has also presented evidence that witness England stayed one night in a hotel in Spanish Fort, Alabama, during trial, at a total cost of $79.52. (Doc. 168-2 at 36). Because this is

under the allowed per diem rate of $100 for lodging in Spanish Fort in March 2013, the Court will allow the full $79.52 cost for England.

Oden has also claimed $715.75 in other witness fees. A review of the documents submitted in support of these fees (Doc. 168-2 at 44-49) indicates that the fees for witnesses Waddy, Whitis, and Sheehan were assessed in accordance with § 1821, with each witness claiming a $40 appearance fee plus mileage at a rate of $0.565/mile. See *supra*. The USDA has objected to the need for Waddy and Sheehan at trial, arguing that Waddy testified as to unsuccessful claims and that it would have stipulated to the limited testimony given by Sheehan regarding the current value of the farm Oden attempted to purchase. The Court, however, finds that these witnesses were reasonably called and will award $715.75 for their fees as costs.

### b. Other Costs & Expenses

Arlington and West Virginia University Hospitals strongly indicate that, when the term "costs" is not defined in a fee-shifting statute, as is the case with § 1691e(d), the term should be read as encompassing only those costs set out in 28 U.S.C. § 1920. See W. Va. Univ. Hospitals, Inc., 499 U.S. at 87 n.3 (1991) ("[Dissenting] Justice Stevens suggests that the expert fees requested here might be part of the 'costs' allowed by § 1988 even if they are not part of the 'attorney's fee.' We are aware of no authority to support the counter-intuitive assertion that the term 'costs' has a different and broader meaning in fee-shifting statutes than it has in the cost statutes that apply to ordinary litigation[.] In Crawford Fitting we held that the word 'costs' in Federal Rule of Civil Procedure 54(d) is to be read in harmony with the word 'costs' in 28 U.S.C. § 1920, see 482 U.S. at 441, 445, 107 S. Ct. at 2497, 2499, and we think the same is true of the word 'costs' in § 1988." (one quotation and citation omitted)); Arlington, 548 U.S. at 301 ("The reasoning of Crawford Fitting strongly supports the conclusion that the term 'costs' in 20

U.S.C. § 1415(i)(3)(B), like the same term in Rule 54(d), is defined by the categories of expenses enumerated in 28 U.S.C. § 1920.”); <u>Trotter v. Columbia Sussex Corp.</u>, 2010 WL 383622, at *11 (S.D. Ala. Jan. 29, 2010) (“Following <u>Dowdell</u>, the Supreme Court ruled that the term ‘costs’ in Section 1988 is no broader than it is in Section 1920.” (citing <u>W. Va. Univ. Hospitals</u>, 499 U.S. at 87 n.3)).

Section 1920 allows for the taxation of the following costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under [42 U.S.C. ]section 1923. . .

Oden has presented evidence that Calamusa and Lowell’s law firm incurred $3,099.10 in costs for “blowbacks/copies” both prior to and for trial. “Blowbacks,” as the USDA explains, are “copies of documents from the CD provided to Plaintiff during discovery[.]” (Doc. 163 at 28). The USDA argues that these costs are due to be excluded, claiming that “Plaintiff never contacted Defendant to determine i[f] copies were available” and that it in fact “had a copy of the entire administrative record in addition to the one that had already been provided to Intervenor when he was representing Plaintiff.” (<u>Id.</u>). Oden argues that these costs should not be excluded because the USDA could have produced these paper copies instead of providing exhibits on a CD and because his counsel could not have known that the USDA was ready and willing to provide extra copies of documents.

Pursuant to § 1920(4), “[f]ees for exemplification and the costs of making copies of any

materials where the copies are necessarily obtained for use in the case" may be taxed. <u>Arcadian Fertilizer, L.P. v. MPW Indus. Services, Inc.</u>, 249 F.3d 1293, 1293 (11th Cir. 2001). Also, "in evaluating copying costs, the court should consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue." <u>U.S. E.E.O.C. v. W&O, Inc.</u>, 213 F.3d 600, 623 (11th Cir. 2000). In that regard, the Court may look to "the purpose of the copies" or "whether the party otherwise had access to the exhibits". <u>Spatz v. Microtel Inns and Suites Franchising, Inc.</u>, 2012 WL 1587663, at *6 (S.D. Fla. May 4, 2012). Generally, "when challenging whether [deposition exhibit copy] costs are properly taxable, the burden lies with the losing party, unless the knowledge regarding the proposed costs is a matter within the exclusive knowledge of the prevailing party." <u>Competitor Liaison Bureau, Inc. v. Cessna Aircraft Co.</u>, 2011 WL 5358548, at *3 (M.D. Fla. Oct. 17, 2011) (citation omitted) (adopted <u>Competitor Liaison Bureau, Inc. v. Cessna Aircraft, Co.</u>, 2011 WL 5358668 (M. D. Fla. Nov. 7, 2011)). The USDA has not met its burden of showing that these costs for copies were not reasonably incurred. Therefore, the full amount of $3,099.10 will be allowed as a cost.

Oden also claims as a cost $930.75 to obtain an audio transcript of the hearing on his first administrative appeal of his loan denial. (Doc. 39). Section 1920(2) allows for the cost of "printed or electronically recorded transcripts necessarily obtained for use in the case . . ." The USDA argues that the recording was unnecessary for trial. In response, Oden merely asserts that having the transcript was "useful in preparing for trial" but does not assert that it was necessary. (Doc. 168 at 21). Accordingly, the Court denies Oden the $930.75 cost of this transcript.

"Taxation of deposition costs is authorized by § 1920(2)." <u>U.S. E.E.O.C.</u>, 213 F.3d at 620. Oden has claimed $286.65 such costs, which the USDA does not contest and the Court finds are due to be awarded as costs.

None of the other expenses claimed by Oden qualify as "costs" under § 1920. Accordingly, the Court finds that Oden is due costs totaling **$5,408.21**.

However, "costs" are not synonymous with "expenses." Eagle Ins. Co. v. Johnson, 982 F. Supp. 1456, 1458 (M.D. Ala. 1997). "[E]xpense includes all the expenditures actually made by a litigant in connection with the lawsuit." Id. (citations omitted). As discussed *supra*, Dowdell states that a "reasonable attorney's fee" award should include reasonable out-of-pocket expenses by the attorney. See Trotter, 2010 WL 383622, at *11 ("While the Supreme Court appears to have precluded an award of reasonable expenses as part of costs, Dowdell's forceful defense of allowing civil rights attorneys their reasonable expenses, 698 F.2d at 1188–92, leaves no doubt that the Eleventh Circuit would approve the awarding of reasonable expenses as part of attorney's fees."). " 'Litigation expenses such as supplemental secretarial costs, copying, telephone costs and necessary travel, are integrally related to the work of an attorney and the services for which outlays are made may play a significant role' " in civil rights litigation. Dowdell, 698 F.2d at 1190 n.13 (quoting Wheeler, 585 F.2d at 623-24). See also Northcross, 611 F.2d at 639 ("Reasonable photocopying, paralegal expenses, and travel and telephone costs are []recoverable [as expenses ]pursuant to the statutory authority of s 1988."). "Expenses which cannot reasonably be considered to be attorney's fees . . . include, among others, docket fees, investigation expenses, deposition expenses, witness expenses, and the costs of charts and maps." Northcross, 611 F.2d at 639.

Excluding items deemed "costs" and only taxable pursuant to § 1920, Oden claims the following expenses:

| | |
|---|---|
| Federal Express | $33.53 |
| Research | $67.25 |

| | |
|---|---|
| Scans | $97.40 |
| Office Supplies | $77.30 |
| Travel Expenses | $2,214.65 (Calamusa & Lowell) |
| | $143.62 (hotel) + $153.87 (car rental) (Allen & Chappell) |
| Postage | $7.56 |
| Faxes | $2.00 |
| Process Service | $471.00 |
| Mileage | 1,521.6 miles (Allen & Chappell) |

The Court will not award expenses for office supplies, to which the USDA has objected, as these constitute an unrecoverable "overhead expense." See Rynd v. Nat'l Mut. Fire Ins. Co., No. 8:09-CV-1556-T-27TGW, 2012 WL 939387 (M.D. Fla. Jan. 25, 2012), report and recommendation adopted, 8:09-CV-1556-T-27TGW, 2012 WL 939247 (M.D. Fla. Mar. 20, 2012) ("[A]n overhead expense is a cost incurred by the firm on a day-to-day basis, no matter whom it represents, such as rent, utilities, and **office supplies**." (citing In re Hillsborough Holdings Corp., 127 F.3d 1398, 1402–03 (11th Cir. 1997) (emphasis added))). Legal research, scans, fax costs, and postage, on the other hand, are recoverable, and the Court finds those expenses reasonable. See Trotter, 2010 WL 383622, at *11-12 (S.D. Ala. Jan. 29, 2010) ("The Eleventh Circuit has concluded that the costs of computerized legal research may be recovered under Section 1988 as a reasonable expense under the Dowdell test . . . [T]he Eleventh Circuit has upheld awards under Section 1988 for both postal expenses, Dowdell, 698 F.2d at 1192, and copying. " (citing cases)).

Oden has also submitted invoices for charges incurred in serving process on witnesses England and Whitis, totaling $471 (Doc. 168-2 at 41-42).  The Court finds these expenses also to

be reasonable, although it will deduct a $75 rush charge incurred for serving England, as the USDA argues that expedited service was unnecessary and Oden has not contested this. Thus, the Court will award $396 for process service expenses.[24]

Oden has submitted documentation indicating that Allen and Chappell incurred $297.49 in travel expenses for the trial - $153.87 for a car rental and $143.67 for a two-day hotel stay during trial. (Doc. 158-6 at 2-3). Because the Court has already found that Allen and Chappell's presence at the trial was unnecessary and unreasonable, *supra*, the Court declines to award Oden these expenses.

Allen and Chappell also list as expenses mileage of 1,521.6 miles in traveling between Birmingham and Mobile three times. (Id. at 3). Reimbursed at a rate of $0.50/mile, this comes to an expense of $760.80. The USDA objects that at least one of these trips, for a settlement conference, was unnecessary. However, the Court has already determined that at least three trips between Birmingham and Mobile were reasonably incurred and therefore finds this mileage expense to be reasonable.

The USDA also objects to travel expenses claimed by Lowell and Calamusa as excessive, especially in light of the amount claimed by Allen and Chappell. A number of the documents submitted by Oden in support of their travel expenses (Doc. 168-2 at 21-35) are illegible as scanned. Of those documents that can be read, the following travel expenses can be determined:[25]

---

[24] Though it does not appear to be mandatory, "private process server fees may be taxed pursuant to §§ 1920(1) and 1921." U.S. E.E.O.C., 213 F.3d at 624.

[25] Oden acknowledges that $18.52 spent on an in-room movie (Doc. 168-2 at 30) is due to be excluded.

|                        | Calamusa                              | Lowell                                |
|------------------------|---------------------------------------|---------------------------------------|
| Hotel (including tax)  | $169.86/night x 3 nights = $509.58    | $169.86/night x 3 nights = $509.58    |
| Meals[26]              | $58.00                                | $233.38                               |
| Mileage (to Mobile)    | $356.45                               | $257.00[27]                           |
| Mileage (to Uniontown) | ----                                  | $95.00                                |
| Valet Parking          | $58.14                                | ----                                  |

The Court finds that Calamusa's mileage is due to be excluded from expenses, as 1) Oden has not explained why it was necessary for Calamusa and Lowell to take separate cars to the trial, or, if they did in fact carpool, why the USDA should be double-charged for mileage, and 2) Oden has not explained why Calamusa incurred approximately 100 more miles than Lowell for traveling to the same location.

Oden contends that the room expenses are reasonable for hotels located near the Mobile federal courthouse. Upon consideration, the Court finds the expenses incurred by Lowell and Calamusa for lodging and meals to be reasonable. As Oden does not respond to the USDA's objection to the valet charges as unreasonable, those will be excluded.

Accordingly, Oden's counsel reasonably incurred $3,027.08 in reasonable out-of-pocket expenses that, under Dowdell, can be included as attorneys' fees. However, because they are considered attorneys' fees, they, like the previously-determined attorneys' fees, are due to be reduced by 40% to account for Oden's limited degree of success in this action, for a total of **$1,816.25** in out-of-pocket expenses.

Thus, Oden is due to be awarded **$95,725.25** in attorneys' fees (including reasonable out-

---

[26] These include both room service and restaurant meals.

[27] Charged at a rate of $0.50 per mile. (Doc. 158-1 at 12-13).

of-pocket expenses) and **$5,408.21** in costs.

## B. Jefferson's Petition

Jefferson seeks an award from Oden of "reasonable attorney's fees and expenses for legal services performed under [a] Contract for Employment entered into with [Oden] on or about April 15, 2010 for legal representation" in this action until November 29, 2011, the date his motion to withdraw as counsel for Oden was granted." (Doc. 157 at 5). Under the Contract of Employment (Doc. 157-1), Oden "agrees to pay [Jefferson] an attorney's fee for []representation one-third (33 1/3%) of any gross recovery before action is filed and forty percent (40%) percent [sic] of any gross recovery after the action is filed[,]" with the Contract of Employment "constitut[ing] a conveyance to said attorney of any undivided interest in the entire cause of action, in the percentages heretofore set forth." (Doc. 157-1 at 1). Though given the opportunity, Oden has not contested Jefferson's petition.[28]

" 'When a federal court decides a state law claim, whether acting pursuant to diversity or

---

[28] The USDA has filed a response in opposition (Doc. 164) to Jefferson's motion for attorneys' fees and costs. However, Jefferson's petition does not appear to seek any fees or costs from the USDA; therefore, the Court need not consider the USDA's response to the petition. Even if Jefferson is attempting to assert entitlement to a statutory award of fees and costs pursuant to 15 U.S.C. § 1691e(d), he does not have a right to do so, as § 1691e, when read as a whole, clearly indicates that the award of attorneys' fees and costs it provides belong to the successful aggrieved party, rather than his attorney. See § 1691e(d) (stating that fees and costs "shall be added to any damages awarded by the court" to the successful aggrieved party). Cf. Reeves v. Astrue, 526 F.3d 732, 735 (11th Cir. 2008) ("We conclude the [Equal Access to Justice Act]'s explicit reference to the 'prevailing party' [in 28 U.S.C. § 2412(d)(1)(A) ]unambiguously directs the award of attorney's fees to the party who incurred those fees and not to the party's attorney . . . Not only is our conclusion firmly rooted in the text of the statute, it parallels our prior interpretation of identical 'prevailing party' language within the very same statute. See Panola[ Land Buying Ass'n v. Clark], 844 F.2d [1506, ]1509–11[ (11th Cir. 1988)]. In Panola, we were called on to determine whether an attorney was eligible to *apply* for attorney's fees under 28 U.S.C. § 2412. See id.; 28 U.S.C. § 2412(d)(1)(B) (indicating a 'party' may apply for fees and expenses if they submit an application showing they are the 'prevailing party'). Relying on the 'straightforward "prevailing party" language in the EAJA,' **we held a party's former attorney had no right to intervene in an action for the purpose of seeking attorney's fees because the attorney was not the prevailing party**. Id. at 1507, 1511–15 . . ." (emphasis added)).

**supplemental jurisdiction**, it applies the choice-of-law rules of the jurisdiction in which its sits.' " Sylvan Learning, Inc. v. Gulf Coast Educ., Inc., No. 1:10-CV-450-WKW, 2010 WL 3943643, at *2 (M.D. Ala. Oct. 6, 2010) (Watkins, J.) (quoting Benchmark Med. Holdings, Inc. v. Rehab Solutions, LLC, 307 F. Supp. 2d 1249, 1258–59 (M.D. Ala. 2004) (Albritton, C.J.) (citing cases)) (emphasis added). "Alabama applies the traditional doctrine[] of *lex loci contractus* to contract claims . . . The doctrine states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction." Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co., 358 F.3d 1306, 1308 (11th Cir. 2004) (citing Cherry, Bekaert & Holland v. Brown, 582 So. 2d 502, 506 (Ala. 1991)) (internal quotations omitted). The Contract of Employment does not appear to contain a choice-of-law provision, and Jefferson's petition does not indicate where the contract was made. However, Jefferson argues for the application of Alabama law to the contract, which Oden does not challenge. Therefore, the Court will apply Alabama law in interpreting the Contract of Employment.[29]

In Alabama, " '[i]t is well recognized that the employment of an attorney by a client is revocable by the client with or without cause, and that such discharge ordinarily does not constitute a breach of contract even with a contract of employment which provides for the payment of a contingent fee.' " Garmon v. Robertson, 601 So. 2d 987, 989 (Ala. 1992) (quoting Gaines, Gaines & Gaines, P.C. v. Hare, Wynn, Newell & Newton, 554 So. 2d 445, 447 (Ala. Civ. App. 1989)) (alteration added). Therefore, Oden's discharge of Jefferson renders the

---

[29] It appears from the evidence that Oden executed the Contract of Employment at his residence in Birmingham, Alabama. A facsimile transmission stamp across the top of the signed Contract of Employment indicates that it was sent from (205) 854-5181, which Oden lists under his signature as his fax number. (Doc. 157-1). The 205 area code covers portions of Alabama, including Birmingham.

contingency-fee provision of the Contract of Employment unenforceable.  See Hall v. Gunter & Gunter, 157 Ala. 375, 379 (1908) ("It is true . . . that it is a principle of law that if A. employs B. to do a certain work for a fixed compensation, and after the service has been in part performed A. either discharges B. or takes such action as to render it impossible for B. to perform the remaining part of the service, while B. cannot recover on the contract, yet he may recover on a quantum meruit for the services which have been rendered under the contract.  This principle has been applied to the relation of attorney and client." (internal citations omitted)); Freeman v. Clarke Cnty., No. 4:08-CV-139-HTW-LRA, 2012 WL 6569378, at *9 (S.D. Miss. Dec. 16, 2012) ("Alabama courts have . . . f[ou]nd[] that if [a] fee was contingent on the attorney's active participation or on the client's recovery, the attorney could not recover if he had been discharged before the fruition of the lawsuit and recovery by the client. See Gaines, Gaines & Gaines, 554 So. 2d at 448 ("any contingent fee agreement between [the client], and the Gaines firm was terminated by [the client] in January of 1988. This discharge came long before the contingency was fulfilled...."). If an attorney is discharged prior to the client's recovery, even because of no fault of the attorney, the condition required for payment cannot occur.").

However, "[f]ederal courts sitting in a state enforce that state's statute creating attorneys' liens."  Panola Land Buying Ass'n v. Clark, 844 F.2d 1506, 1514 (11th Cir. 1988).[30]  "It is well established in Alabama that upon an attorney's discharge, the prior part performance of a contract entitles the attorney to recover for those services rendered."  Triplett v. Elliott, 590 So. 2d 908, 910 (Ala. 1991).  The Alabama Supreme Court has held "that the purpose of [Alabama's]

---

[30] "Of course, state attorney's lien statutes may be applied in the federal courts so long as the state's procedure for enforcement of the attorney's lien and the state's statute establishing the priority of any such lien do not do violence to federal procedural statutes and rules and to the priorities of encumbrances as established by federal statutes."  Panola, 844 F.2d at 1514 n.19.

attorney's lien statute, § 34-3-61, Code of Ala. 1975, is to protect the attorney from loss of his investment in time, effort, and learning, and the loss of funds used in serving the interest of the client. The protection afforded by the statute is not limited to attorneys of record at the time of settlement or when judgment is rendered." Id. (internal citation omitted). The attorney's lien statute provides, in relevant part: "Upon actions and judgments for money, [attorneys-at-law] shall have a lien superior to all liens but tax liens, and no person shall be at liberty to satisfy the action or judgment, until the lien or claim of the attorney for his or her fees is fully satisfied; and attorneys-at-law shall have the same right and power over action or judgment to enforce their liens as their clients had or may have for the amount due thereon to them." § 34-3-61(b).

> " ' "The rule in Alabama is that an attorney discharged without cause, or otherwise prevented from full performance, is entitled to be reasonably compensated only for services rendered before such discharge. Hall v. Gunter, 157 Ala. 375, 47 So. 155 [ [1908] ]. This appears to be the prevailing rule where the contract, as here, called for a contingent fee. 6 C.J. p. 724, § 293." ' "

Triplett, 590 So. 2d at 910 (quoting Gaines, Gaines & Gaines, P.C. v. Hare, Wynn, Newell & Newton, 554 So. 2d 445 (Ala. Civ. App. 1989) (quoting Owens v. Bolt, 218 Ala. 344, 348, 118 So. 590 (1928))).[31]

"Just as a federal court must apply state law to determine whether a party is entitled to fees, it must also apply state law to resolve disputes about the reasonableness of fees." Kearney v. Auto-Owners Ins. Co., 713 F. Supp. 2d 1369, 1373 (M.D. Fla. 2010) (citing, e.g., Trans Coastal Roofing Co., Inc. v. David Boland, Inc., 309 F.3d 758, 760 (11th Cir. 2002) ("Since

---

[31] A review of Oden's and Jefferson's filings leading to Jefferson's withdrawal from representation (Docs. 62, 66, 68) indicate that disagreements arose between counsel and client regarding both the pace and scope of the litigation, with Oden first moving that Jefferson withdraw (Doc. 62). The Court finds that Jefferson was discharged by Oden without cause (notwithstanding its previous Order granting Jefferson's withdrawal "[f]or good cause shown . . ." (Doc. 77 at 1)).

Boland's claim for attorneys' fees sounds in state law and reaches us by way of federal diversity jurisdiction, we apply the substantive law of Florida, the forum state." (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938))). But see Gowen Oil Co., Inc. v. Abraham, 511 F. App'x 930 (11th Cir. 2013) (applying federal "lodestar" principles to award of fees pursuant to Georgia statute). The Alabama Supreme Court has approved the "consider[ation of] the several factors set out in Peebles v. Miley, 439 So. 2d 137 (Ala. 1983), for determining a reasonable attorney fee and for arriving at a quantum meruit recovery." Triplett, 590 So. 2d at 910. See also Gaines, 554 So. 2d at 449 ("The trial court specified in its order the consideration of the criteria set out by our supreme court in Peebles v. Miley, 439 So. 2d 137 (Ala. 1983), for determining reasonable attorney fees . . . We recognize . . . that the trial court utilized the proper criteria for its determination and that the determination of reasonable attorney fees lies within the discretion of the trial court."). The Peebles factors include:

 (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.

Van Schaack v. AmSouth Bank, N.A., 530 So. 2d 740, 749 (Ala. 1988) (citing Peebles). Accord Madison Cnty. Dep't of Human Res. v. T.S., 53 So. 3d 38, 44 (Ala. 2009) (citing Van Schaack). Not all of these criteria must be met or brought into play. Van Schaack, 530 So. 2d at 749; Graddick v. First Farmers & Merchants Nat'l Bank of Troy, 453 So. 2d 1305, 1311 (Ala. 1984).[32] "The determination of whether an attorney fee is reasonable is within the sound

---

[32] It is unclear how applicable a "lodestar" analysis is in calculating a *quantum meruit* attorney's (Continued)

discretion of the trial court . . . ." <u>City of Birmingham v. Horn</u>, 810 So. 2d 667, 681 (Ala. 2001) (quotation omitted). "Nevertheless, the trial court's order regarding an attorney fee must allow for meaningful review by articulating the decisions made, the reasons supporting those decisions, and the performance of the attorney-fee calculation." <u>Id.</u> at 682.

(a)     <u>Time Consumed</u>

"It is generally recognized that the 'first yardstick that is used by the trial judges [in assessing the reasonableness of an attorney-fee request] is the time consumed.' " <u>Pharmacia Corp. v. McGowan</u>, 915 So. 2d 549, 553 (Ala. 2004) (quoting <u>Peebles</u>, 439 So. 2d at 141). Jefferson has submitted an invoice of itemized records of expenses and services provided and time expended by him and his staff as counsel for Oden in this action until his withdrawal was granted on November 29, 2011. (Doc. 157-4). Jefferson claims $20,531.45 in fees based on hours of work performed and $5,446.09 in expenses. His fees are based on the following billing rates and numbers of hours worked:

| **Billing Party** | **Billing Rate** | **Total Hours** | **Total Fees** |
|---|---|---|---|
| Jefferson (attorney) | $300/hour | 41.4 | $12,420.00 |
| S. Thompson (paralegal) | $125/hour | 31.7 | $3,962.50 |
| T. Haynes (law clerk) | $75/hour | 60.35 | $4,526.25 |
| Total | | | $20,908.75 (20,531.45)[33] |

---

fee under Alabama law. <u>See</u> <u>Freeman</u>, 2012 WL 6569378, at *11("The parties here seem to assume in their papers that a *quantum meruit* recovery is necessarily calculated by applying the lodestar method as is done under Title 42 U.S.C. § 1988 jurisprudence. This court, however, is not persuaded that using the lodestar is mandatory under Alabama law when calculating a fee recovered in *quantum meruit.* The Alabama Supreme court requires that a *quantum meruit* fee be calculated in the same way that a "reasonable attorney's fee" is calculated [under <u>Peebles</u>].").

[33] The Court's own calculations as to Jefferson's total fees, in multiplying the number of hours entered by each person at the applicable rates, is $20,908.75. However, Jefferson's own invoice puts the total at $20,531.45.

He has also submitted his own affidavit attesting to his experience and to the reasonableness and necessity of the claimed fees and expenses, which Oden has not challenged.

In reviewing Jefferson's invoice, the Court has determined that some time claimed is due to be reduced or eliminated as unreasonable, with Jefferson's claimed time being reduced by 6.7 hours and paralegal Thompson's by 2.6 hours.[34]  Accordingly, the Court finds as reasonable 34.7

---

[34] Specifically, the Court has reduced or eliminated the following billing entries (Doc. 157-4):

| Date of Entry | Billing Party | Time Billed (hours) | Time Awarded by Court (hours) | Court's Reduction (& Reason) |
|---|---|---|---|---|
| 5/28/2010 | Jefferson | 2.0 | 0.3 | -1.7 (unreasonable to spend 2 hours to review 1-page consent motion for extension of time to respond to complaint) |
| 5/28/2010 | Jefferson | 0.3 | 0.1 | -0.2 (unreasonable to spend over 0.1 hours to review a notice of appearance) |
| 6/1/2010 | Jefferson | 0.5 | 0.1 | -0.4 (unreasonable to spend over 0.1 hours reviewing endorsed order granting motion for extension of time to respond to complaint) |
| 6/4/2010 | Jefferson | 0.5 | 0.2 | -0.3 (unreasonable to spend over 0.2 hours reviewing corporate disclosure statements) |
| 6/7/2010 | Thompson | 0.2 | 0.1 | -0.1 (unreasonable time spent reviewing magistrate's noting of corp. disclosure statement – only took Jefferson 0.1 hours) |
| 7/14/2010 | Thompson | 0.3 | 0.1 | -0.2 (unreasonable time spent reviewing & filing notice of summons issued) |
| 7/15/2010 | Jefferson | 0.3 | 0.1 | -0.2 (unreasonable time spent reviewing notice of filing of motions) |
| 7/19/2010 | Jefferson | 0.2 | 0.1 | -0.1 (unreasonable to spend more than 0.1 hours reviewing endorsed order to amend complaint) |
| 2/25/2011 | Jefferson | 0.5 | 0.1 | -0.4 (unreasonable to spend more than 0.1 hours reviewing endorsed order extending deadline) |

(Continued)

hours expended by Jefferson and 29.1 hours expended by Thompson.  All 60.35 hours expended by law clerk Haynes were viewed as reasonable.

(b)      Nature & Value of the Subject Matter of the Employment

This action involved the claims of one plaintiff alleging racial discrimination arising from a single loan transaction in violation of the ECOA.  "[N]othing before [the Court] indicates that the cause of action involved novel, difficult, or complex legal questions or facts."  Madison Cnty. Dep't of Human Res. v. T.S., 53 So. 3d 38, 55 (Ala. 2009) (quoted language from analysis under "nature & value" Peebles factor) (plurality opinion by 4 justices, 3 justices concur in result).  The only possible exception to this finding is the somewhat complex and difficult process of obtaining sufficient evidence and expert testimony to prove Oden's claimed lost

| 3/11/2011 | Thompson | 0.6 | 0.2 | -0.4 (unreasonable amount of time spent printing and filing two motions) |
|---|---|---|---|---|
| 9/13/2011 | Thompson | 0.5 | 0.1 | -0.4 (unreasonable amount of time to file motion for extension of time) |
| 10/26/2011 | Jefferson | 1.3 | 0.4 | -0.9 (Jefferson not entitled to quantum meruit recovery for time to draft intervenor complaint, as this was not a service rendered to Oden) |
| 10/26/2011 | Thompson | 0.5 | 0.3 | -0.2 (no quantum meruit recovery for work on intervenor complaint) |
| 11/2/2011 | Jefferson | 1.0 | 0 | -1.0 (no recovery for work re intervenor complaint) |
| 11/2/2011 | Thompson | 0.3 | 0 | -0.3 (no recovery for work re intervenor complaint) |
| 11/15/2011 | Jefferson | 1.5 | 0 | -1.5 (time for drafting response to Oden's objection to Jefferson's motion to withdraw was not a service for Oden's benefit – response protects Jefferson's interests) |
| 11/15/2011 | Thompson | 1.0 | 0 | -1.0 (time spent on response to Oden's objection to Jefferson's motion to withdraw not for Oden's benefit) |

profits.

        (c)      <u>Learning, Skill, and Labor Requisite to this Action's Proper Discharge</u>

Based on its observation of the proceedings in this action, the Court finds that no special learning or skill was necessary for its proper discharge, nor do Jefferson's own time invoices indicate that this action was unusually labor-intensive.

        (d)      <u>Professional Experience and Reputation of Jefferson</u>

Jefferson's affidavit (Doc. 157-3 at 1-2) and his law firm biography (Doc. 157-2) indicate that he has been licensed to practice law since 1984 and has over 25 years of litigation experience in both state and federal courts. He also served as a Texas District Judge for five years, as a mediator since 1997, and as an approved arbitrator with the American Arbitration Association since 2006.

        (e)      <u>Weight of Jefferson's Responsibilities</u>

Upon consideration, the Court finds that Jefferson's responsibilities in this action were not exceptionally or unusually great.

        (f)      <u>Measure of Success Achieved</u>

As was already discussed *supra*, Oden's success in this action was limited in comparison to the relief initially sought. However, because Jefferson withdrew, at Oden's insistence, prior to the close of discovery and well before trial, this factor should not weigh heavily against Jefferson.

        (g)      <u>Reasonable Expenses Incurred or Advanced on Behalf of the Client</u>

Upon consideration, the Court finds reasonable the $5,446.09 claimed for expenses, which includes "the cost of issuing summons, filing the lawsuit, package delivery, and the cost of

retaining expert witnesses." (Doc. 157-3 at 2).[35]

(h)    <u>Whether Fee Fixed or Contingent</u>

As discussed *supra*, Jefferson agreed to represent Oden in this action on a contingency basis. The Alabama Supreme Court has "[r]ecognize[d] that when an attorney accepts a client on a contingent-fee basis, the attorney assumes the risk of nonpayment for expenses and is acting at his own peril. 'If someone is willing to take the great risk of giving up the sure quantity for the uncertain, and wins, then the uncertain prize should be worth more than the certain one.' Therefore, this risk must be considered when determining the reasonableness of a fee." <u>Madison Cnty. Dep't of Human Res.</u>, 53 So. 3d at 56 (quoting <u>Peebles</u>, 439 So. 2d at 142) (plurality opinion). "A careful balance must be struck between the need to maintain public confidence in the fairness and integrity of the bar against the need to encourage attorneys to take doubtful cases and to pursue them vigorously." <u>Id.</u> Considering the award of damages to Oden and the need to maintain public confidence, the Court finds that a 40% contingent award would be excessive.

(i)    <u>Nature and Length of the Professional Relationship</u>

Nothing in the record indicates that Jefferson had served as counsel for Oden in any previous matters prior to this action, and given the acrimonious nature of the circumstances leading to Jefferson's withdrawal, the Court doubts that Jefferson and Oden will continue in any sort of professional relationship after this action is concluded. Therefore, this factor is given little weight as to the reasonableness of Jefferson's fees.

(j)    <u>Fee Customarily Charged in the Locality for Similar Legal Services</u>

Jefferson has requested that he be compensated at a rate of $300/hour, his paralegal at a

---

[35] A *quantum meruit* analysis does not specifically limit the types of expenses and costs except to the extent that they must be reasonably incurred.

rate of $125/hour, and his law clerk at a rate of $75/hour. In support, Jefferson's affidavit states that such rates are reasonable and customary for legal services performed in Houston, Texas, between 2010 and 2011. (Doc. 157-3 at 1-2). However, the relevant locality for determining customary fees is the place where the action was filed – in this case, Mobile, Alabama. See Lifeline Pharmaceuticals, LLC v. Hemophilia Infusion Managers, LLC, Civ. A. No. 11-0398-WS-M, 2012 WL 2600181, at *3 (S.D. Ala. July 5, 2012) (In submitting rates for requested contractual attorneys fees, "[t]he plaintiff has produced no evidence that these are reasonable hourly rates in commercial collection cases in the Mobile area. See Peebles, 439 So.2d at 141–42 (when evaluating the factor of "[t]he fee customarily charged in the locality for similar legal services," the relevant locality was "the Mobile area"); cf. American Civil Liberties Union v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999) ("The general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed.") (internal quotes omitted).").

The Court, which is familiar with the prevailing rates in the local market, may act as its own expert and rely on its "knowledge and experience" to determine the reasonableness and propriety of the requested rates. Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). The Court finds reasonable the requested rate for law clerk Haynes. See SE Prop. Holdings, LLC v. 145, LLC, Civ. A. No. 10-00521-KD-B, 2012 WL 6681784, at *4 (S.D. Ala. Dec. 21, 2012) (DuBose, J.) (finding $75/hour to be a reasonable rate for a law clerk in Mobile). However, the Court finds the requested rate for Jefferson and paralegal Thompson, however, are unreasonable. In Trotter v. Columbia Sussex Corp., 2010 WL 383622, at *1-5 (S.D. Ala. Jan. 29, 2010) (Steele, J.), the Court found reasonable a rate of $280/hour for a well-regarded local attorney with 30 years of experience, primarily in civil rights and constitutional law, and $250/hour for a local

attorney with 25 years of experience and a good reputation but with limited civil rights experience. Jefferson has presented evidence of 25 years of experience as both a litigator and judge, but he has not presented any evidence of exceptional experience in civil rights or constitutional law. Accordingly, the Court will award Jefferson a reasonable billing rate of $250/hour. But see Vision Bank v. Anderson, Civ. A. No. 10-0372-KD-M, 2011 WL 2142786, at *3 (S.D. Ala. May 31, 2011) (DuBose, J.) (in collection case, finding $250/hour to be a reasonable rate for a Mobile attorney with 15 years of experience as a law firm partner). As for Thompson, the Court's standard reasonable rate for paralegals is $75/hour, and Jefferson has not presented any evidence that Thompson possesses qualifications warranting a higher rate. See, e.g., 145, LLC, 2012 WL 6681784, at *5 (citing cases).

(k)     Likelihood that a Particular Employment May Preclude Other Employment

Jefferson has presented no evidence indicating that he was precluded from other employment by representing Oden in this action, and the Court finds no reason to believe that he was. Cf. Madison Cnty. Dep't of Human Res., 53 So. 3d at 57 ("Nothing in the record indicates that this case precluded Fees from other employment or required Fees to rearrange other court dates, to cease working on other cases, or to hire additional staff, etc."). Accordingly, this factor is due no weight.

(l)     Time Limitations Imposed by the Client or by the Circumstances

Jefferson has presented no evidence that he was under any time limitations or that other difficult circumstances existed in his representation of Oden, and the Court cannot readily discern any such circumstances (other than those which led to his withdrawal). Accordingly, this factor is due no weight.

Upon consideration of the Peebles factors, the Court finds that Jefferson is due to recover

the following amounts in *quantum meruit* for services rendered to Oden in this case:

| | | | | | |
|---|---|---|---|---|---|
| Jefferson | $250/hr | x | 34.7 hours | = | $8,675.00 |
| Thompson | $75/hr | x | 29.1 hours | = | $2,182.50 |
| Haynes | $75/hr | x | 60.35 hours | = | $4,526.25 |
| Expenses | | | | | $5,446.09 |
| | | | | **Total** | **$20,829.84** |

"Under the Alabama lien law, an attorney's lien is enforceable only against monies acquired by the client as a result of the lawyer's services rendered in the particular action or proceeding by which the money is produced." Panola Land Buying Ass'n v. Clark, 844 F.2d 1506, 1514 (11th Cir. 1988) (citing Johnson v. Riddle & Ellis, 204 Ala. 408, 85 So. 701 (1920)) (footnote omitted). Accordingly, Oden shall be **ORDERED** to pay Jefferson **$20,829.84** from the damages received from the USDA in this action

## III.    Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that Oden's petition for attorneys' fees and costs (Doc. 158) is **GRANTED in part** and **DENIED in part**, such that Oden is awarded from the Defendant **$95,725.25** in attorneys' fees and **$5,408.21** in costs; and that Jefferson's petition for attorneys' fees and costs (Doc. 157) is **GRANTED in part** and **DENIED in part**, such that Jefferson is awarded from Plaintiff Oden **$20,829.84** in attorneys' fees and expenses from the amounts awarded to Oden in this action.

Final judgment shall be entered by separate document.

**DONE** and **ORDERED** this the **9th** day of **August 2013**.

 /s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**